UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE: ) Bankruptcy No. 04 B 10104
) Chapter 7
JANICE DIANE RYBKA, ) Judge John H. Squires
)
Debtor. )

### MEMORANDUM OPINION

These matters come before the Court on the final report and account of Gina Krol, Chapter 7 trustee (the "Trustee") of the bankruptcy estate of Janice Diane Rybka (the "Debtor"), the Trustee's application for compensation for her services as trustee under 11 U.S.C. §§ 326 and 330, and the application for compensation of her attorneys, the law firm of Cohen & Krol (the "Attorneys") under 11 U.S.C. § 330. The Trustee seeks fees totaling $8,848.15. The Debtor objects, arguing that only $2,531.00 should be allowed based on the amount of estate funds actually received by the Trustee and distributed to creditors who filed claims. The Trustee's Attorneys seek fees totaling $1,925.75, as well as expenses of $30.70, for services rendered from September 2004 through November 15, 2005. The Debtor objects to these fees and expenses because the Attorneys were not employed by order of the Court pursuant to 11 U.S.C. § 327 until November 18, 2005, and the order was not entered nunc pro tunc or retroactively to the date they began work in September 2004.

For the reasons set forth herein, the Court allows the Trustee's fees in the sum of $8,000.00. The objection to the Attorneys' application is sustained because no excusable neglect has been shown for the delay in obtaining the order of retention until after almost all of the services had been rendered.

-2-

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain these matters pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. They are core proceedings under 28 U.S.C. § 157(b)(2)(A) and (O).

## II. FACTS AND BACKGROUND

Most of the relevant facts are undisputed. The Debtor filed a voluntary Chapter 7 petition on March 15, 2004. Thereafter, the Trustee was duly appointed. The Debtor received a discharge on July 19, 2004. Among the assets of the bankruptcy estate created under 11 U.S.C. § 541 was the Debtor's undivided one-half interest in certain real property that she inherited from her mother. That property is located at 4930 West 24th Place, Cicero, Illinois (the "Property"). Apparently, the Property was devised to the Debtor and her sister, Sharon Wojcik ("Wojcik"), in equal shares.

On September 30, 2004, the Trustee filed an application which sought authority to sell the Property for a gross purchase price of $244,000.00 in order to generate funds to pay a dividend to the unsecured creditors of the estate, defray closing costs, fund a repair escrow, and pay 50% of the net proceeds to Wojcik. Attached to the application was a copy of the real estate contract signed by the Debtor and Wojcik, as well as the proposed purchasers. The Trustee did not sign the contract. On September 30, 2004, the Trustee also filed applications to employ both the real estate broker who apparently obtained the offer from the prospective purchasers and special counsel to handle the closing of the sale. All three applications were subsequently approved by the Court. Most significantly, the order authorizing the sale of the Property provided for the sale

-3-

of the whole Property, not just the estate's undivided one-half interest, and specifically authorized the Trustee to pay the closing costs, the repair escrow, the realtor's commission, special counsel's fee, and 50% of the net proceeds to the Debtor's sister as co-owner of the Property.

Thereafter, in December 2004, the Debtor moved for an interim disbursement of estate funds because all creditors were expected to have their allowed claims paid in full, with interest, and a surplus was to be refunded to the Debtor. That distribution was allowed, as was a second distribution in April 2005.

On November 16, 2005, the Trustee filed an application to employ the Attorneys as her general counsel. That application was subsequently granted on November 18, 2005. Thereafter, on December 12, 2005, the Trustee filed her final report and account, as well as the instant applications for her fees and the Attorneys' fees and expenses. The United States Trustee filed a certificate of review on December 14, 2005, indicating no objection to either application. The Trustee's final report and account and the applications were set for hearing on January 20, 2006. The Debtor filed objections to the applications on January 17, 2006.

The two principal issues before the Court are: (1) whether the Trustee's requested fees, as capped by 11 U.S.C. § 326(a), should be based only upon the bankruptcy estate's one-half interest in the Property that was sold or whether that calculation should also include Wojcik's one-half interest that was the subject of the Trustee's sale motion; and (2) whether the Attorneys' fees and costs should be allowed under the "excusable neglect" standard because the belated order of retention under 11 U.S.C. § 327 was not obtained until after all of the services had been rendered.

-4-

## III. DISCUSSION

A.  **The Debtor's Standing**

A threshold issue is whether the Debtor has standing to object to the applications for fees and expenses. The parties have not raised this point, but the Court addresses the issue because it is not common for Chapter 7 debtors to object to such fees. Debtors generally lack standing to object to fee applications in the typical Chapter 7 case in which not all creditors and parties in interest have their claims paid in full pursuant to the priorities set forth in 11 U.S.C. § 726(a)(1)-(5) and payment is seldom made to the debtor under § 726(a)(6). The conditions that endow parties with standing to participate in bankruptcy proceedings are more limited than those that suffice to establish standing under Article III of the U.S. Constitution, and parties must be "directly and adversely affected pecuniarily" by an order of the bankruptcy court in order to have standing. *In re Andreuccetti*, 975 F.2d 413, 416 (7th Cir. 1992) (internal quotation omitted).

Thus, the general rule is that, unlike creditors, Chapter 7 debtors lack standing to object to or appeal from orders of the bankruptcy court because the commencement of liquidation proceedings extinguishes any pecuniary interests that they formerly held in the property of the estate. *See In re Schultz Mfg. Fabricating Co.*, 956 F.2d 686, 692 (7th Cir. 1992). The exception to this rule occurs if a surplus may result in the estate at the conclusion of the proceedings, which would then afford the debtor standing. *Andreuccetti*, 975 F.2d at 417. To invoke such an exception, the debtor must show that a surplus is a reasonable possibility, not just that there is a theoretical chance of a surplus. *Id.* That has been done here as shown by the Trustee's final report and account, which proposes to pay in full and with interest the single pre-petition unsecured creditor who filed a proof of claim, after payment of allowed expenses of

-5-

administration. Moreover, the Debtor has already received two partial distributions. The motivation for the Debtor's objections to the fees and expenses is obvious: the less paid on claims for priority expenses of administration, the greater the amount of the final refund to the Debtor. Thus, the Court finds that the Debtor has standing to make the objections.

**B.     11 U.S.C. §§ 326(a) and 330(a)(1)**

The principal controlling statutory authorities are 11 U.S.C. §§ 326(a) and 330(a)(1), which provide respectively as follows:

> (a) In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

11 U.S.C. § 326(a).

> (a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, or a professional person employed under section 327 or 1103–
>> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and
>> (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1).

-6-

The legislative history makes it clear that § 326(a) simply fixes the maximum compensation paid to a trustee. "The limits in [§ 326(a)], together with the limitations found in section 330, are to be applied as outer limits, and not as grants or entitlements to the maximum fees specified." S. REP. NO. 95-989, at 37 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5823. "The maximum fee schedule is based on decreasing percentages of increasing amounts." *Id.*

### 1. The Trustee's Application

The Trustee's application generally summarizes the time that she spent in performing the various tasks administering the bankruptcy estate: asset analysis and recovery, particularly in connection with the sale of the Property–12.75 hours; banking and bonding for estate accounts and property–5 hours; case administration, including review of schedules and preparation of the annual and final reports–4 hours; analysis of claims–1.65 hours; and preparation for and conducting the initial and continued meetings of creditors–3 hours. The number of hours totals 26.4. No objection was raised with respect to any of the services performed or the amount of time expended. The application asserts that the total disbursements to parties in interest, excluding the Debtor, was $151,963.01. From that figure, the Trustee follows the statutory dictates of § 326(a) and computes the requested fees as follows: 25% of the first $5,000.00 or $1,250.00, plus 10% of the next $45,000.00 or $4,500.00, plus 5% of the next $950,000.00 or $3,098.15[1] for a total request of $8,848.15.

---

[1] The Trustee's calculations are clearly in error. The amount remaining from the original figure, once the $5,000.00 and $45,000,00 figures are subtracted, is $101,963.01. Five percent of this sum is $5,098.15–not $3,098.15 as reported by the Trustee. The Trustee acknowledges in her papers that the total request of $8,848.15 should be higher. Despite the Trustee's mathematical error, the Court will conduct its analysis based on the $8,848.15 figure cited by the Trustee.

-7-

Try as it has, the Court simply cannot ascertain from the record, including the final report and account, how the total disbursements figure was derived. The Trustee's final report shows total disbursements of $186,890.28. Subtracting the two interim distributions to the Debtor totaling $55,000.00 does not produce the sum of $151,963.01 ($186,890.28 - $55,000.00 = $131,890.28). Thus, the Court is left to speculate about the origin of that figure.

Despite that accounting mystery, the basis of the Debtor's objection is clear. The Debtor urges the Court to use the figure of $17,810.18 as the total amount of disbursements made by the Trustee because that is the amount of the only unsecured non-priority claim filed in the case which the final report and account contemplates paying in full. Using that as the starting figure under the statutory cap of § 326(a), the Debtor computes that the properly allowable Trustee's fee is $2,531.00 (25% of the first $5,000.00 or $1,250.00, plus 10% of the next $45,000.00 or $1,281.00 equals $2,531.00). The Debtor concedes that the Trustee is entitled to a reasonable fee for her services and does not object to this lesser amount.

The Debtor notes that the final report shows that the cash received and deposited into the Trustee's bank account consisted of an income tax refund from the Debtor and the estate's one-half of the net proceeds from the sale of the Property, plus interest earned, for a total of $115,947.54. The Debtor concludes that because Wojcik's one-half of the net proceeds from the sale of the Property was not paid to the Trustee and distributed from the Trustee's bank account, Wojcik's share should not be counted as part of the base in the § 326(a) computation. The Debtor cites *In re Barnett*, 133 B.R. 487 (Bankr. N.D. Iowa 1991), for the proposition that the base for computation of the fee does not include property abandoned or turned over to secured creditors and argues that that point should be followed here by analogy. In this case, however, there was

-8-

neither an abandonment under 11 U.S.C. § 554 nor a turnover in kind under 11 U.S.C. § 542 or 543. Rather, the Trustee sold both the estate's and Wojcik's interests in the Property under 11 U.S.C. § 363 by virtue of the Trustee's Court-approved sale application. The fact that the application and order did not specifically reference the provisions of § 363(h) is of no moment. To penalize the Trustee for such an omission would improperly put form over substance.

In addition, the Debtor cites *Staiano v. Cain (In re Lan Assocs. XI, L.P.)*, 192 F.3d 109 (3d Cir. 1999), urging that just as credit bids by secured creditors should not be counted as funds disbursed by a trustee for purposes of calculating a trustee's fee under § 326(a), most reported cases limit the funds to be counted to cash or its equivalent that a trustee actually disburses to parties in interest. Further, the Debtor argues that constructive disbursements or disbursements in kind of other property do not qualify for inclusion in the distribution base for calculation of the statutory cap.

On this point the Trustee notes that the statutory text expressly includes monies disbursed to holders of secured claims. *See Kennedy v. Rams Hill, LLC (In re Borrego Springs Dev. Corp.)*, 253 B.R. 271, 284-85 (S.D. Cal. 2000). Thus, she argues that the sale of the entire Property–and the distribution of one-half of the net proceeds to Wojcik–is more like a sale of property subject to a lien, with the proceeds used to satisfy the lien, than an abandonment or a credit bid. What actually happened in this matter was not a sale subject to any lien held by Wojcik as a creditor of the Debtor. Instead, Wojcik was the owner of an undivided one-half interest in the Property, and the bankruptcy estate was the owner of the other one-half interest.

More persuasive is the case law cited by the Debtor that concludes that a trustee's compensation can be appropriately based on funds held and disbursed by third parties on behalf

-9-

of the trustee. *See In re Tyczka*, 287 B.R. 465, 469 (Bankr. E.D. Mo. 2002) (disbursement by title company); *In re Reid*, 251 B.R. 512, 518 (Bankr. W.D. Mo. 2000) (disbursement by third party pursuant to instructions from trustee). The real estate closing settlement statement for the sale of the Property indicates that the sale was handled by a settlement agent or escrow agent of the title company. All parties, including the Trustee, the Debtor, Wojcik, and the purchasers, agreed that the title company would handle the closing of the sale of the Property. Thus, the title company was the agent for all of the parties. Moreover, the checks for the net proceeds show that the agency closing escrow account was funded by the purchasers' closing proceeds. One check was made payable to Wojcik and another check to the Trustee, who subsequently deposited that sum into her account for the estate, as shown by the final report and account.

The Seventh Circuit has not addressed the question of whether the distribution to a creditor of sale proceeds that have not passed through a trustee's account should be counted in the base of "moneys disbursed or turned over" for purposes of § 326(a). Those courts that have decided similar issues are split. *Compare In re Kaiser*, 112 F. 955 (D. Mont. 1902) (finding that no fees would be allowed on monies that did not become part of the bankruptcy estate or did not come into possession or control of the trustee); *In re Moreno*, 295 B.R. 402 (Bankr. S.D. Fla. 2003) (concluding that funds paid by a settlement agent in connection with the sale of real property could not be included in calculating the trustee's aggregate disbursements because the settlement agent was not authorized to represent the trustee or act as her agent); *and In re Indoor-Outdoor Dining, Inc.*, 77 B.R. 952 (Bankr. S.D. Fla. 1987) (holding that disbursements made by a title company following the sale of the debtor's property could not be equated with disbursements by the trustee for purposes of calculating the trustee's compensation), *with In re*

-10-

*Schautz*, 390 F.2d 797 (2d Cir. 1968) (holding that where a joint tenant of the bankrupt consented to the sale of the entire property and the trustee initially received the total proceeds of the sale, the trustee was entitled to fees based upon the total sum received from the sale notwithstanding the fact that part of the proceeds went to the joint tenant); *and In re Blair*, 313 B.R. 865 (Bankr. E.D. Cal. 2004) (concluding that monies disbursed by an escrow company to secured creditors after the trustee sold properties subject to their security interests could be included in the trustee's fee base because the trustee obtained the court's express approval to use the escrow holder to distribute the sale proceeds).

Secondary sources persuasively note that when a holder of a secured claim joins in the case to have its collateral sold free and clear of all liens, with its security interest to attach to the proceeds, the trustee's compensation is properly based on the total sale price. 3 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 326.02[2][f], at 326-13 (15th ed. rev. 2005) (*citing Sw. Media, Inc. v. Rau*, 708 F.2d 419 (9th Cir. 1983)). *Collier* further states that "[t]he crucial test seems to be whether the particular property has been justifiably administered during the bankruptcy case and whether the trustee has properly performed services in relation to that property. . . . Compensation must be based on actual monies distributed to parties in interest, not constructive disbursements." *Id.* ¶ 326.02[2][f][ii], at 326-14 (footnote omitted).

Applying those principles to the facts of this matter convinces the Court that the more reasoned view is the one espoused by the Trustee with respect to her fees. The Trustee specifically sought and received the Court's authority to distribute Wojcik's one-half interest to her, which the Trustee proceeded to do via the settlement escrow. Had all of the net sale proceeds been deposited into the Trustee's account and the Trustee then paid Wojcik with a check from that

-11-

account, the technical basis for the Debtor's argument would disappear. Although Wojcik was not a creditor of the Debtor, she was certainly a party in interest with respect to the sale of the Property, and she undeniably received her one-half share of the sale proceeds. Without the Trustee's involvement to effectuate the sale, the title to the Property likely would not have been either merchantable or insured and the sale to the purchasers would not have successfully closed.

Accordingly, the Court finds that the Trustee's services were properly performed in relation to the whole of the Property. Because actual monies were disbursed to Wojcik for her one-half share, those funds should equitably be counted as part of the Trustee's compensation for her services in relation to the sale of the Property. Thus, the Debtor's objection on this point is overruled. To hold for the Debtor would effectively provide her with a windfall and inequitably penalize the Trustee for not processing all of the net sale proceeds through her account and then paying Wojcik from that account. Such a result would not change the outcome with respect to Wojcik. Rather, it would unfairly reward the Debtor for the work performed by the Trustee.

Because the Court is unable to determine the correct starting figure for the calculations on application of § 326(a) as a result of the Trustee's imprecise numbers, the Court will not allow the full amount sought by the Trustee. Moreover, cases uniformly state that § 326(a) establishes only a cap or limit and is not a grant or entitlement. Hence, the Court can award an appropriate lesser sum which it will do in this case by utilizing a lodestar analysis. The Court notes that the Trustee used a billing rate of $315.00 per hour when acting as her own attorney and devoted slightly more than 26 hours to perform her duties. The Court concludes that the Trustee's

reasonable compensation under § 330, as capped by § 326(a), is the sum of $8,000.00.[2] The Court makes this determination after consideration of all relevant points and authorities noted in *In re Stoecker*, 118 B.R. 596, 601-05 (Bankr. N.D. Ill. 1990), which are incorporated herein by reference.

### 2. The Attorneys' Application

A different result is reached with respect to the Attorneys' fees and expenses, however, because the Attorneys have not demonstrated that their admitted neglect to obtain an order of retention prior to performing the legal work to assist the Trustee was "excusable." *See In re Singson*, 41 F.3d 316, 319 (7th Cir. 1994). The motion to employ the Attorneys did not request that the Court authorize their retention retroactively. The delay in obtaining the belated order of retention was over a year after all of the services had been rendered and was the result of the Attorneys' admitted inadvertent oversight which was entirely within their reasonable control and not attributable to anyone else. The firm is comprised of very able and experienced attorneys, including the Trustee. All of them know the fundamental practice and procedure of obtaining an order of retention under § 327 before performing much (or in this case almost all) of the work and then seeking fees under § 330. There has been no showing that the neglect was excusable–mere inadvertence is not the same as excusable neglect. *See id.* at 320. To allow the requested Attorneys' fees under these facts would subvert the general rule requiring an order of retention early in the process before significant work is performed, not after it has been completed. Thus, the Court sustains the Debtor's objection to the Attorneys' application.

---

[2] The Court acknowledges that 26 hours multiplied by $315.00 per hour equals $8,190.00. However, because of the Trustee's mathematical errors and the imprecision of the figures in this matter, the Court elects to round the compensation figure down.

-13-

## IV. CONCLUSION

For the foregoing reasons, the Court allows the Trustee's fees in the sum of $8,000.00. The Debtor's objection to the Attorneys' application for fees and expenses is sustained.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

**ENTERED:**

DATE: 3/20/06

John H. Squires
United States Bankruptcy Judge

cc: See attached Service List

## SERVICE LIST

### Janice Diane Rybka

### Bankruptcy No. 04 B 10104

Gina B. Krol, Trustee
Cohen & Krol
105 W. Madison Street, Suite 1100
Chicago, IL 60602

Richard L. Hirsh, Esq.
Richard L. Hirsh & Associates PC
15 Spinning Wheel Road, #128
Hinsdale, IL 60521

William T. Neary, U.S. Trustee
227 West Monroe Street
Suite 3350
Chicago, IL 60606

Gina B. Krol, Esq.
Cohen & Krol
105 W. Madison Street, Suite 1100
Chicago, IL 60602